UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| XTI AEROSPACE, INC.<br><br>        Petitioner,<br>v.<br><br>CHARDAN CAPITAL MARKETS LLC<br><br>        Respondent. | CASE NO. _____<br><br>**PETITION FOR DECLARATORY RELIEF AND INJUNCTIVE RELIEF (TO STAY ARBITRATION)** |

Petitioner XTI Aerospace, Inc. ("Aerospace"), by and through its attorneys, Mitchell Silberberg & Knupp LLP, as and for its Petition for a declaratory judgment and to enjoin an arbitration, alleges as follows:

## INTRODUCTION

1. On or about June 7, 2022, Respondent Chardan Capital Markets LLC ("Chardan") and non-party XTI Aircraft Company ("the Aircraft Company") entered into an agreement entitled "Engagement for IPO or Other Strategic and Financing Transaction" (the "Engagement Letter"), a true and correct copy of which is attached as Exhibit A. According to the Engagement Letter, Chardan was, *inter alia*, to act as "lead underwriter, financial advisor, sole bookrunner and investment banker in connection with [a] proposed initial public offering . . . or other financing . . ." for the Aircraft Company, as well as to act "as exclusive Merger and Acquisition Advisor for alternative transactions" for the Aircraft Company. The Engagement Letter provided for Chardan and the Aircraft Company to arbitrate disputes between them arising out of or relating to the Engagement Letter before the Financial Industry Regulatory Association ("FINRA").

2. On or about March 12, 2024, the Aircraft Company and Chardan amended the Engagement Letter pursuant to an Amendment to Engagement Letter (the "Amendment"), a true and correct copy of which is attached as Exhibit B.

3. Following the Amendment, a wholly owned subsidiary of Inpixon merged with and into the Aircraft Company, with the Aircraft Company surviving the merger as a wholly owned subsidiary of Inpixon. Upon consummation of the merger, Inpixon changed its name to "XTI Aerospace Inc."

4. Aerospace (f.k.a. Inpixon) is not a party to the Engagement Letter or the Amendment, nor did Aerospace otherwise agree to arbitrate any dispute with Chardan. Indeed, Aerospace and the Aircraft Company were adverse parties and unrelated to each other when Chardan and the Aircraft Company entered into the Engagement Letter and Amendment.

5. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, Aerospace seeks a declaration that it did not agree to arbitrate, and there is no other basis for compelling Aerospace to arbitrate, any dispute with Chardan, including the dispute that is the subject of an arbitration now pending before FINRA that is entitled, <u>Chardan Capital Markets LLC v. XTI Aerospace, Inc and XTI Aircraft Company</u>, Case No. 24-01664 (the "Arbitration"). For the avoidance of doubt, Aerospace seeks this declaration only on its own behalf, not on behalf of the Aircraft Company.

6. Pursuant to the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 4 and CPLR 7503(b), Aerospace also seeks an order enjoining Chardan from proceeding with the Arbitration and permanently staying the Arbitration as to Aerospace. Again, for the avoidance of doubt, Aerospace seeks this relief only on its own behalf, not on behalf of the Aircraft Company.

## JURISDICTION

7. This is a claim under the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, as diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

8. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391,

inasmuch as Chardan is based in New York, New York and has purported to commence the subject arbitration and, unless enjoined, such arbitration will take place in New York City by agreement of the parties.

## THE PARTIES AND A NON-PARTY

9. At all pertinent times, Aerospace was and is a corporation organized under and existing pursuant to the laws of the State of Nevada. Until recently, its principal place of was located in Palo Alto, California. Now, Aerospace's principal place of business is located in Englewood, Colorado.

10. At all pertinent times, according to Chardan, Chardan was and is a company duly established and validly existing under the laws of the State of New York, with its principal place of business located in New York, New York. According to publicly available records, no member of Chardan resides in Nevada or Colorado.

11. On March 12, 2024 (after the Amendment), the Aircraft Company, the non-party, became a subsidiary of Aerospace, *i.e.*, almost two years after the Aircraft Company and Chardan had signed the Engagement Letter.

## FACTUAL ALLEGATIONS

12. Chardan and the Aircraft Company executed the Engagement Letter and the Amendment. The Engagement Letter, as amended, contains the arbitration agreement between Chardan and the Aircraft Company.

13. Aerospace did not sign either the Engagement Letter or the Amendment.

14. Moreover, Aerospace never agreed to be bound by the Engagement Letter, as amended, nor did it otherwise adopt the rights and obligations established by the Engagement Letter, as amended. Indeed, while Aerospace (f.k.a. Inpixon) agreed in the merger to assume certain specified contracts of the Aircraft Company, the Engagement Letter, as amended, was not one of them, at least in part because Inpixon had its own investment banking agreement with its own investment banker and this investment banking agreement by its terms survived the merger. At

all relevant times, Chardan was aware that Aerospace/Inpixon had its own investment banker.

15. Although the Engagement Letter, as amended, extended to and covered those persons and entities who were the Aircraft Company's "affiliates" on June 7, 2022, Aerospace was not an affiliate of the Aircraft Company on that date. Rather, Aerospace was an unrelated party and adverse to the Aircraft Company as of June 7, 2022.

16. The Amendment did not even purport to extend the Engagement Letter, including the arbitration clause therein, to Aerospace, even though the Amendment explicitly noted the possibility of a transaction that would lead the Aircraft Company to become affiliated with Aerospace, which ultimately occurred only one day after Chardan and the Aircraft Company entered into the Amendment.

17. If Chardan and the Aircraft Company had intended that Aerospace, as a future affiliate of the Aircraft Company, be bound by the Engagement Letter, as amended, and/or the arbitration clause therein, the Engagement Letter or the Amendment would have said so and/or otherwise specified that "future affiliates" of the Aircraft Company would be so bound, which they did not do. Chardan was well-aware of the terms of the merger when it signed the Amendment.

18. Chardan commenced the Arbitration against the Aircraft Company and Aerospace via a Statement of Claim dated August 1, 2024.

19. However, Aerospace did not receive documentation reflecting commencement of the Arbitration until August 12, 2024.

20. Aerospace has not participated in the Arbitration in any respect. Moreover, Aerospace has advised FINRA that it is not bound, and thus does not intend, to participate in the Arbitration.

## COUNT I
## DECLARATORY JUDGMENT

21. Aerospace realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 20 as if fully set forth herein.

22. An actual controversy has arisen and now exists between Aerospace and Chardan

regarding whether Aerospace is bound by the arbitration clause contained in the Engagement Letter, as amended, or otherwise is subject to FINRA's jurisdiction in connection with the Arbitration. Chardan maintains that Aerospace is bound to arbitrate before FINRA. On the other hand, Aerospace maintains that it is not bound by any aspect of the Engagement Letter, including the arbitration clause, and there is no other basis for compelling Aerospace to arbitrate with Chardan.

23. Pursuant to 28 U.S.C. § 2201, a judicial determination of the respective rights of the parties is necessary and appropriate under these circumstances.

## COUNT II
### (Injunctive Relief Under § 4 of the FAA and CPLR 7503(b))

24. Aerospace realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 23 as if fully set forth herein.

25. Pursuant to § 4 of the FAA and CPLR § 7503(b), Chardan should be permanently enjoined from proceeding with the Arbitration as to Aerospace and the Arbitration should be permanently stayed as to Aerospace because Aerospace is not a party to the Engagement Letter, as amended, and Aerospace has not otherwise agreed to arbitrate any dispute with Chardan.

## PRAYER FOR RELIEF

WHEREFORE, Aerospace demands that this Court enter judgment in its favor and against Chardan, granting the following relief:

1. A declaration that Aerospace is not bound by the Engagement Letter, as amended, and the arbitration clause therein, and there is no basis for compelling Aerospace to arbitrate with Chardan;

2. An injunction permanently enjoining Chardan from proceeding with the Arbitration as to Aerospace and permanently staying the Arbitration as to Aerospace;

3. An award of reasonable costs in connection with this proceeding; and

4. An award of any and all additional relief that the Court deems just and proper.

| | |
|---|---|
| Dated: August 30, 2024 | MITCHELL SILBERBERG & KNUPP LLP |
| | */s/ David B. Gordon* |
| | By:   David B. Gordon |
| | dbg@msk.com |
| | 437 Madison Avenue |
| | 25th Floor |
| | New York, New York 10022 |
| | Tel:  212-509-3900 |
| | |
| | *Attorneys for Petitioner* |
| | *XTI Aerospace Inc.* |

- 2 -